Viviano, J.
In these consolidated cases, we consider the proper assessment of points under offense variable (OV) 7 (aggravated physical abuse).[1] Specifically, our focus is on what type of conduct under OV 7 constitutes “conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.”[2] In both cases, the circuit courts concluded that the defendants’ respective conduct supported assessing 50 points for OV 7 pursuant to MCL 777.37(l)(a). We conclude that the plain meaning of the phrase “conduct designed to substantially increase the fear and anxiety a victim suffered during the offense” encompasses both defendant Hardy’s act of racking a shotgun during a carjacking and defendant Glenn’s violent behavior during an armed robbery. Accordingly, we affirm the circuit court’s scoring decision in Hardy. In Glenn, we reverse the judgment of the Court of Appeals and remand the case to the circuit court for reinstatement of defendant Glenn’s July 22, 2010 judgment of sentence.
I. FACTS AND PROCEDURAL HISTORY
A. PEOPLE v HARDY
In July 2010, defendant Hardy and an accomplice approached a man, who had just exited his car. Hardy *435 pointed a shotgun at the man, racked it,[3] and demanded that the man give him everything he had. The man grabbed the barrel of the shotgun and tried to wrench it out of Hardy’s grasp, but Hardy overpowered him, and Hardy and his accomplice drove off in the man’s vehicle. Police arrested both men a few hours later.
Hardy pleaded guilty to one count of carjacking.[4] At sentencing, the prosecutor argued that the circuit court should assess 50 points for OV 7 because Hardy had not only displayed a shotgun, but had also pointed it at the victim and racked it. The prosecutor claimed that the act of racking a shotgun was “conduct designed only to threaten the victim with immediate violent death.” Defense counsel agreed to the scoring, stating, “I cannot argue with that, your Honor.” Accordingly, the circuit court assessed 50 points for OV 7 and sentenced Hardy to 12 to 50 years’ imprisonment.
Hardy filed a motion for resentencing, challenging the OV 7 scoring and claiming that defense counsel had been constitutionally ineffective for consenting to it. The circuit court denied the motion, concluding that the 50-point score under OV 7 was proper and that defense counsel was not constitutionally ineffective. After Hardy filed a delayed application for leave to appeal in the Court of Appeals, a majority of the panel denied leave for lack of merit in the grounds presented.[5] However, the dissenting judge would have remanded for resentencing on the ground that the circuit court incorrectly scored OV 7.
*436 We granted leave to consider whether the circuit court erroneously assessed 50 points for OV 7 because Hardy racked the shotgun during the carjacking and whether defense counsel was ineffective for waiving this issue.[6]
BPEOPLE v GLENN
In August 2009, defendant Glenn and an accomplice entered a gas station convenience store. He carried what two store employees later described as a “sawed-off shotgun.”[7] Glenn ordered one of the employees to approach the front counter. As the employee did so, Glenn struck him in the back of the head with the butt of the weapon. The blow was so forceful that it knocked him to the ground. Glenn then forced both employees behind the counter and demanded money, which Glenn grabbed out of the cash register and safe. He hit the second employee in the side of the head with the butt of his weapon before fleeing with his accomplice in a waiting getaway car. Soon afterward, police stopped the getaway car and arrested Glenn. Neither employee suffered any injuries.
Glenn pleaded guilty to one count of armed robbery[8] and one count of assault with a dangerous weapon.[9] At sentencing, the prosecutor argued that striking the employees with the weapon was designed to “get them to move faster, to be afraid,” and that this was sufficient *437 to assess 50 points for OV 7 because it involved “conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.” The circuit court agreed with the prosecutor and assessed 50 points for OV 7 over defense counsel’s objection. The circuit court then sentenced defendant to 15 to 30 years’ imprisonment for the armed robbery and 18 to 48 months’ imprisonment for the felonious assault.[10]
In a published opinion, the Court of Appeals vacated defendant’s sentence and remanded for resentencing.[11] The Court acknowledged that Glenn, by striking the employees, used more violence than was “strictly necessary” to complete an armed robbery.[12] But the Court of Appeals concluded that the circuit court erred because OV 7 was only “meant to be scored in particularly egregious cases involving torture, brutality, or similar conduct designed to substantially increase the victim’s fear, not in every case in which some fear-producing action beyond the bare minimum necessary to commit the crime was undertaken.”[13]
We granted leave to appeal to consider whether the circuit court erroneously assessed 50 points for OV 7 because Glenn committed “assaultive acts beyond those necessary to commit the offense.”[14]
II. STANDARD OF REVIEW
We take this opportunity to clarify the applicable standards of review for a sentencing guidelines scoring *438 issue. In Glenn, the Court of Appeals stated that an appellate court “reviews a trial court’s scoring of the sentencing guidelines to determine whether the trial court properly exercised its discretion and whether the record evidence adequately supports a particular score.”[15] This is an imprecise statement of applicable law.
As we have explained before, the abuse of discretion standard formerly predominated, in sentencing review.[16] But when the Legislature enacted the sentencing guidelines in 1998, it prescribed detailed instructions for imposing sentences, thereby reducing the circumstances under which a judge could exercise discretion during sentencing.[17] Under the sentencing guidelines, the circuit court’s factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence.[18] Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo.[19]
*439 In these cases, we review for clear error the factual findings that the defendants’ conduct was designed to substantially increase the fear and anxiety of their victims. We review de novo whether, these acts were sufficient to assess 50 points for OV 7.
III. ANALYSIS
A. INTERPRETING MCL 777.37 (OV 7)
As we have stated before, our goal in interpreting a statute “is to ascertain and give effect to the intent of the Legislature. The touchstone of legislative intent is the statute’s language. If the statute’s language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written.”[20]
MCL 777.37 governs OV 7. MCL 777.37(1) provides, in full:
(1) Offense variable 7 is aggravated physical abuse. Score offense variable 7 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
(a) A victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense .......................................................................50 points
(b) No victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense......................................................................0 points
A trial court can properly assess 50 points under OV 7 if it finds that a defendant’s conduct falls under one of *440 the four categories of conduct listed in subsection (1)(a). No party contends that any of the first three categories (sadism, torture, or excessive brutality) applies in these cases. Thus, our focus is on the fourth category— whether defendants engaged in “conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.”[21]
Other than “sadism,”[22] the statute does not define the individual terms used in the listed categories, so we presume that the Legislature intended for the words to have their ordinary meaning.[23] Thus, we turn to the dictionary for guidance in interpreting the terms used in the phrase: “conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.”[24]
The phrase begins with the words “conduct designed.” “Designed” means “to intend for a definite purpose.”[25] Thus, the word “designed” requires courts to evaluate the intent motivating the defendant’s conduct.[26] Next, we come to the words “substantially increase.” “Substantial” means “of ample or considerable amount, quantity, size, etc.”[27] To “increase” means “to *441 make greater, as in number, size, strength, or quality; augment.”[28] Applying these definitions to the relevant text, we conclude that it is proper to assess points under OV 7 for conduct that was intended to make a victim’s fear or anxiety greater by a considerable amount.[29]
In Glenn, the Court of Appeals erred by ignoring the Legislature’s second use of the word “or” in the provision at issue. MCL 777.37(1)(a), reads: “[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered[.]”[30] “Or” is a word “used to indicate a disunion, a separation, an alternative.”[31] While the first “or” may be interpreted as linking the first three categories in a common series, the second “or” separates the last OV 7 category from the series that precedes it. Thus, the use of “or” before the phrase “conduct designed” shows that this phrase is an independent clause that has an independent meaning. The Court of Appeals in Glenn therefore erred by interpreting the statute in a manner inconsistent with its plain meaning.
The Court of Appeals also erred in Glenn to the extent it concluded that “circumstances inherently present in the crime must be discounted for purposes of *442 scoring an OV”[32] To the contrary, absent an express prohibition, courts may consider conduct inherent in a crime when scoring offense variables. The sentencing guidelines explicitly direct courts to disregard certain conduct inherent in a crime when scoring OVs 1, 3, 8, 11, and 13.[33] In all other cases, “the Sentencing Guidelines allow a factor that is an element of the crime charged to also be considered when computing an offense variable score.”[34] It was error for the Court of Appeals to state or imply otherwise in Glenn.
However, we agree with the Court of Appeals that “ [a]ll. . . crimes against a person involve the infliction of a certain amount of fear and anxiety.”[35] Since the “conduct designed” category only applies when a defendant’s conduct was designed to substantially increase fear, to assess points for OV 7 under this category, a court must first determine a baseline for the amount of fear and anxiety experienced by a victim of the type of *443 crime or crimes at issue. To make this determination, a court should consider the severity of the crime,[36] the elements of the offense, and the different ways in which those elements can be satisfied. Then the court should determine, to the extent practicable, the fear or anxiety associated with the minimum conduct necessary to commit the offense.[37] Finally, the court should closely examine the pertinent record evidence, including how the crime was actually committed by the defendant. As noted above, evidence which satisfies an element of an offense need not be disregarded solely for that reason. Instead, all relevant evidence should be closely examined to determine whether the defendant engaged in conduct beyond the minimum necessary to commit the crime, and whether it is more probable than not that such conduct was intended to make the victim’s fear or anxiety increase by a considerable amount.
In summary, we conclude that a defendant’s conduct does not have to be “similarly egregious” to “sadism, torture, or excessive brutality” for OV 7 to be scored at 50 points, and that, absent an express statutory prohibition, courts may consider circumstances inherently present in the crime when scoring OV 7. The relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the *444 offense; and, if so, (2) whether the conduct was intended to make a victim’s fear or anxiety greater by a considerable amount.[38]
B. APPLICATION TO HARDY
Evidence in the record, including Hardy’s own plea colloquy, established that he pointed a shotgun at the victim and then racked it. The purpose of racking a shotgun is to pull a new round of ammunition from the magazine tube and slide it into the firing chamber.[39] Racking the weapon makes it ready to fire.[40]
We first consider whether racking the shotgun went beyond the minimum conduct necessary to commit a carjacking. A carjacking occurs “in the course of committing a larceny of a motor vehicle[.]”[41] While doing so, a defendant must use (1) “force or violence,” (2) “the threat of force or violence,” or (3) put “in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle.”[42] Hardy threatened his *445 victim with violence by pointing the shotgun at him and racking it, even though merely displaying the weapon or pointing it at the victim would have been enough to issue a threat. Because Hardy took the extra step of racking the shotgun, the circuit court correctly assessed 50 points for OV 7 as long as this conduct was designed to substantially increase the victim’s fear beyond the usual level that accompanies a carjacking.
Hardy argues that he racked the shotgun solely for the purpose of getting his victim to comply, not to substantially increase his victim’s fear. But racking a shotgun under these circumstances only urges compliance if doing so makes the victim fear imminent, violent death if he or she does not comply. Hence, even if Hardy’s ultimate goal was to provoke compliant behavior, a preponderance of the evidence shows that his conduct was designed to substantially increase the fear of his victim beyond the usual level that accompanies a carjacking, to the point where the victim feared imminent death.
Because Hardy took the extra step of racking the shotgun, and because he did so to make his victim fear that a violent death was imminent, not just possible, the circuit court properly assessed 50 points for OV 7.
“Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion.”[43] Because the circuit court properly scored OV 7, any objection to the court’s assessment of points would have been meritless. As a result, Hardy’s counsel did not provide ineffective assistance by failing to object to the scoring.
C. APPLICATION TO GLENN
Turning to Glenn’s case, we begin again by consid *446 ering whether he went beyond the minimum conduct necessary to commit an armed robbery.[44] To commit this crime, a defendant must engage “in conduct proscribed under [MCL 750.530,]” Michigan’s robbery statute, which criminalizes using “force or violence against any person who is present” at a larceny or assaulting or putting “the person in fear[,]” “in the course of committing a larceny.”[45] To commit an armed robbery, the defendant must also either (1) possess “ a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon,” or (2) represent “orally or otherwise that he or she is in possession of a dangerous weapon[.]”[46] To rob the convenience store, Glenn could have simply put the victims in fear by orally representing that he had a weapon. Instead, he chose to threaten the victims with what appeared to be a sawed-off shotgun, and then used it to strike two different victims in the head. Hence, Glenn’s conduct went beyond that necessary to commit an armed robbery.
We next consider whether this conduct was designed to increase the fear or anxiety of the victims by a considerable amount. By striking the employees in the head, knocking one to the ground, and forcing both of them behind the store counter, Glenn demonstrated to his victims that he was willing to follow through on his threat to harm them, and he placed them in a place of *447 increased vulnerability, where escape was almost impossible. It is more probable than not that Glenn, like Hardy, engaged in this conduct to frighten his victims into compliance. We can infer this from the fact that Glenn assaulted the employees while making monetary demands. His conduct was designed to elevate his victims’ fear from the concern that accompanies an unrealized threat (the fear that a criminal will become violent), to the concern that accompanies actualized violence (the fear that an attacker’s blows will cause injury or death). This constitutes a considerable amount of additional fear.
Because Glenn’s conduct went beyond that necessary to effectuate an armed robbery, and because he intended for his conduct to increase the fear of his victims by a considerable amount, the Court of Appeals erred by holding that the circuit court incorrectly assessed 50 points for OV 7.
IV CONCLUSION
We hold that because a preponderance of the evidence established that Hardy racked a shotgun to increase the fear of his victim by a considerable amount, the circuit court properly assessed 50 points for OV 7 by finding that Hardy’s conduct of racking a shotgun while pointing it at the victim constituted “conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.” Accordingly, we affirm the circuit court’s assessment of 50 points for OV 7 in Hardy.
We further hold that because a preponderance of the evidence established that Glenn struck two victims with the butt of what appeared to be a sawed-off shotgun, knocked one victim to the ground, and forced both victims behind a store counter to make them fear imminent, serious injury or death, the circuit court appropriately *448 assessed 50 points for OV 7. In Glenn, we reverse the Court of Appeals and remand the case to the circuit court for reinstatement of the judgment of sentence.
Young, C.J., and Markman, Kelly, Zahra, and McCormack, JJ., concurred with Viviano, J.

 MCL 777.37.

 MCL 777.37(1)(a).

 To “rack” a shotgun is to pull the slide of the weapon along the forestock, then push it back to its original position. See United States Army Technical Manual 9-1005-338-13&P, “Mossberg 12-Gauge Shotgun Model 500/590,” 0004 00-2 (2005).

 MCL 750.529a.

 People v Hardy, unpublished order of the Court of Appeals, entered November 18, 2011 (Docket No. 306106).

 People v Hardy, 491 Mich 934 (2012).

 In fact, the weapon was an “airsoft” gun that was designed to look like a real firearm. Airsoft guns shoot plastic pellets, rather than live ammunition. An-Hung Yao v Indiana, 975 NE2d 1273, 1275, n 1 (Ind, 2012).

 MCL 750.529.

 MCL 750.82. This latter charge resulted from Glenn pointing his airsoft gun at an off-duty corrections officer who had pursued Glenn as he fled the gas station.

 The Court of Appeals incorrectly stated that Glenn’s armed robbery sentence was 18 to 30 years in prison. People v Glenn, 295 Mich App 529, 530; 814 NW2d 686 (2012).

 Id. at 536.

 Id.

 Id.

 People v Glenn, 491 Mich 934 (2012).

 Glenn, 295 Mich App at 532.

 People v Babcock, 469 Mich 247, 253-254; 666 NW2d 231 (2003).

 Id. at 255. Now, under the sentencing guidelines, the abuse of discretion standard only applies when an appellate court reviews a circuit court’s conclusion that there was a “substantial and compelling reason” to depart from the guidelines. Id. at 265.

 People v Osantowski, 481 Mich 103, 111; 748 NW2d 799 (2008). Several recent Court of Appeals decisions have stated that “[s]coring decisions for which there is any evidence in support will be upheld.” See, e.g., People v Carrigan, 297 Mich App 513, 514; 824 NW2d 283 (2012); People v Phelps, 288 Mich App 123, 135; 791 NW2d 732 (2010); People v Endres, 269 Mich App 414, 417; 711 NW2d 398 (2006). This statement is incorrect. The “any evidence” standard does not govern review of a circuit court’s factual findings for the purposes of assessing points under the sentencing guidelines.

 People v Babcock, 469 Mich at 253 (2003).

 People v Gardner, 482 Mich 41, 50; 753 NW2d 78 (2008) (quotation marks and citations omitted).

 MCL 777.37(1)(a).

 MCL 777.37(3).

 MCL 8.3a.

 People v Peals, 476 Mich 636, 641; 720 NW2d 196 (2006).

 Random, House Webster’s College Dictionary (2001).

 As in other areas of criminal law, “[ilntent generally may be inferred from the facts and circumstances of a case.” In re People v Jory, 443 Mich 403, 419; 505 NW2d 228 (1993). For this reason, a defendant does not have to verbalize his intentions for a judge to find that the defendant’s conduct was designed to elevate a victim’s fear or anxiety. Rather, a court can infer intent indirectly by examining the circumstantial evidence in the record that was proven by a preponderance of the evidence.

 Random House Webster’s College Dictionary (2001).

 Id.

 We note that by the statute’s own terms, the focus is on the intended effect of the conduct, not its actual effect on the victim. Accord People v Kegler, 268 Mich App 187, 191; 706 NW2d 744 (2005) (“Points are assessed where ‘a victim was treated with .. . torture, or excessive brutality or conduct designed to increase’ a victim’s fear and anxiety. The statute does not require, for instance, that ‘a victim experienced... torture, or excessive brutality or conduct designed to increase’ fear and anxiety.”) (emphasis added).

 Emphasis added.

 Mich Pub Serv Co v City of Cheboygan, 324 Mich 309, 341; 37 NW2d 116 (1949).

 Glenn, 295 Mich App at 535. The Court of Appeals relied on People v Hunt, 290 Mich App 317; 326; 810 NW2d 588 (2010), for this proposition. In Hunt, the Court of Appeals reviewed a defendant’s OV 7 score for his actions during a series of kidnappings and assaults, and it correctly noted that “unlike OV 1, OV 2, and OV 3, OV 7 does not state that ‘[i]n multiple offender cases, if 1 offender is assessed points for [the applicable behavior or result], all offenders shall be assessed the same number of points.’ ” Id. Likewise, the court also noted in Hunt that, MCL 777.38(2)(b) provides that, “[transportation to a place of greater danger is appropriately scored under OV 8, but must be given a score of zero points when, as here, the sentencing offense is kidnapping.” Id. But these observations do not establish the rule that the Court of Appeals stated in Glenn because they are properly understood as exceptions to the general rule that such conduct may be considered. People v Gibson, 219 Mich App 530, 534; 557 NW2d 141 (1996).

 MCL 777.31(2)(e); MCL 777.33(2)(d); MCL 777.38(2)(b); MCL 777.41(2)(c); MCL 777.43(2)(e).

 Gibson, 219 Mich App at 534.

 Glenn, 295 Mich App at 536.

 OV 7 is scored for all offenses classified as “crimes against a person.” MCL 777.22(1). This category of felonies encompasses a broad spectrum of crimes ranging from those that may cause little or no fear and anxiety to a victim during the offense, to those crimes that, by their very nature, tend to cause a great deal of fear and anxiety to a victim during the offense.

 We acknowledge that courts cannot calculate this “fear baseline” with mathematical certainty. However, such precision is not required because it merely serves as a benchmark against which to measure the intended increase in fear associated with defendant’s conduct.

 One purpose of the sentencing guidelines is to facilitate proportionate sentences. People v Babcock, 469 Mich 247, 263; 666 NW2d 231 (2003). Justice Cavanagh believes that our holding today “would result in disproportionate sentencing” because our interpretation of the “conduct designed” category does not require the same level of “very egregious” conduct as the other OV 7 categories to assess 50 points. Post at 454. We respectfully disagree. Our holding today does not conflict with the guidelines’ goal of proportionality because it is for the Legislature, not this Court, to decide what types of conduct warrant similar scoring under MCL 777.37.

 United States Army Technical Manual 9-1005-338-13&P, “Mossberg 12-Gauge Shotgun Model 500/590,” 0004 00-2 (2005). This action would also extract and eject a spent casing if the weapon has already been fired. Id.

 Id. at 0005 00-1 - 00-2.

 MCL 750.529a(1).

 Id.

 People v Riley (After Remand), 468 Mich 135, 142; 659 NW2d 611 (2003).

 The sentencing court based its OV 7 scoring exclusively on Glenn’s conduct during the armed robbery, not on his conduct during the subsequent felonious assault. In addition, the prosecutor does not argue that the conduct underlying the felonious-assault conviction merited OV 7 scoring. Accordingly, we do not consider whether that conduct could have formed an independent basis for scoring OV 7 in Glenn’s case.

 MCL 750.529; MCL 750.530.

 MCL 750.529.